Huffman *v.* Huffman.

GEORGE HUFFMAN *v.* DAVID P. HUFFMAN *et als.*

CONVEYANCE. *Redelivery of deed. Abandonment.* A conveyance of land may be rescinded by a redelivery of the deed to the grantee, and unequivocal acts of abandonment on the part of the grantor; and, after such redelivery and acts, such deed, in a court of equity, will be declared a cloud on the title and cancelled.

FROM BEDFORD.

Appeal from the Chancery Court at Shelbyville. A. S. MARKS, Ch.

COOPER & FRIERSON for complainant.

IVIE & DAVIDSON for defendants.

FREEMAN J., delivered the opinion of the court.

In November, 1865, the complainant conveyed his home and tract of land of about three hundred acres,

in Bedford county, to his three sons, the defendants. The consideration stated on the face of the deed is two thousand dollars.

A bond, however, or contract, is found in the record, of the same date, in which the defendants bind themselves, in consideration that the land had been deeded to them, to furnish George Huffman, wife and family, with all kinds of food and clothing necessary for a family, for the benefit of George Huffman and wife, and no further; also, furnish fire-wood to them ready for use, to give them the entire right and use of all that is attached to said plantation, to have the sole management of the stock, all the household and kitchen furniture, the sole use of both the shops and tools, and two mills (a saw and grist mill), and profits of same. They further agreed to pay various sums, after the death of the father and mother, to six or seven other children of George—their brothers and sisters—the sums varying from one to two hundred dollars, or more, to each child. The obligation to perform these stipulations is enforced by a penalty of two thousand dollars in favor of George Huffman and wife.

It is probable, from the proof, this obligation was executed some weeks, if not months, after the deed was made and delivered. Both were drawn up by the father, it seems, without consultation with the sons, and the deed delivered to Daniel P., the bond presented by him, and they requested to sign it, which they did. The sons were illiterate, and could neither read nor write. The father seems to have

been a man of fair business qualifications. The sons were in very moderate circumstances, if not poor.

It is clearly shown in the proof, and is beyond question, that this whole transaction was carried out by the father for the purpose of covering up his property, and avoiding the payment of a security debt claimed against him by the Bank of Tennessee, which debt he had paid during the war in Confederate money, and thought he ought not to pay it again. Judgment was had against him on the debt, the payment in Confederate money at that time having been held void by the courts.

This bill is filed in 1873. After stating the conveyance, and terms of the obligation for support, and that this obligation was the only real consideration for the deed, it charges that there had been a failure of consideration, because of alleged failure on the part of the sons to comply with the terms of the contract by furnishing the support stipulated for, and on this ground seeks a rescission of the contract.

To this aspect of the bill a demurrer was filed, on which no action seems to have been taken by the court as far as we can see. Suffice it to say, that, from the facts thus stated, no rescission of the contract could have been deduced, as it amounted, on the allegations of the bill, to nothing more than a failure to pay for the land as agreed on; and the party's remedy was not rescission, but a suit at law or in equity to recover the amount due, or have the obligation enforced. It would seem, too, the complainant would be repelled from a court of equity

also, by the fact that the deed was made certainly by him to hinder and delay his creditors, though no such defense is made by the respondents, and they claim not to have participated in the fraudulent purpose. We need not definitely, however, decide the question as to whether such decree would have been made on the proof alone, without any pleading raising the issue. It suffices to say, we see no ground on which the complainant is entitled to a rescission of the contract or conveyance for the land.

The only other ground furnished is based on the allegation, substantially, that the contract had been abandoned and the deed given up by mutual consent, and so treated by the parties for a number of years.

There is a good deal of testimony in the record on both sides of this question. The complainant swears most definitely it was as charged, the defendants swearing to the contrary. As parties having an equal interest, and each with feelings warmly enlisted on his own side, their testimony must be received with many grains of allowance. In addition, we can see indications of want of memory possibly, or probably extreme bias, on the part of the defendants, leading them to warp the facts stated by them to most unnatural results. For instance, they insist they furnished their father with considerable supplies, and present large accounts against him on this score. It is pretty certain, however, that all the grain and other supplies were rents of land occupied and cultivated by them—parts of the very land now claimed by them. In view of these and other things we might

notice, we cannot attach much weight to their testimony. We will assume the testimony in weight to be about equal between the parties themselves as witnesses on this subject. We think the scale is conclusively and satisfactorily turned in favor of the charges of complainant's bill by other facts and circumstances shown in the testimony, as well as by the conduct of the respondents before the suit commenced. First, we find that when Mr. Whiteside, the attorney of the father, advised the father, in the presence of one of the sons, that the land could not be protected from the bank debt by the conveyance, the son said to the father, substantially: "Then, father, we will have no more to do with the land, or with the deed." The son had gone with his father, taking the deed with him, to consult Mr. Whiteside on the question. He took out the deed, handed it to him, and asked if it would hold against the bank debt. This was in the fall of 1866. After this, the deed was placed in possession of the father and left, and never again demanded from him, as far as we can see from the proof. Again, in 1871, another son purchased 140 acres of this land from the father, transferring notes received from the sale of a tract of land in Lincoln county, for $800, in part payment, and giving his own note for $400, the balance of the purchase money. He procured the surveyor to survey this tract, accepted a deed for it, and has lived on it, paying taxes for it ever since. At the same time, another son had a smaller tract surveyed for him by the surveyor, and a deed was prepared for

him, but not delivered, probably because there was to be an additional division of the tract, and he was advised to take another portion of the land on the other side of the creek. It is also probable that soon after this the notion was conceived of holding the land under the deed of 1865. This survey was in 1871. Further, at this time all the sons were present, and the whole transaction well understood by them all, and the matter all discussed. In addition, the surveyor says it was understood he was in future to complete the division of the balance of the tract by laying off shares for two other children not connected with the original deed of 1865.

All this accords with what would naturally have occurred under the circumstances.

The father had put his land in the names of his sons, taking their obligation, such as we have mentioned, intending to shield his property from an impending debt. This, if not known, as we suspect it was, to be the motive at the time by the sons, was known soon after when Whiteside was consulted about the matter. Finding it fruitless for the purpose intended, nothing was more natural than to abandon it all, especially after the bank debt was paid; and not knowing that a reconveyance was necessary properly to complete revestiture of title, the parties rescinded or gave up the whole contract, and the matter was thus understood to be at an end. Such, we think, is the truth of this case, and accords with all the conduct of the respondents, notwithstanding they swear differently in their depositions. It is highly proba-

Huffman v. Huffman.

ble if it had not been for ill-blood gendered between these sons and some of the other members of the family, this claim could not have been arrested.

We hold that the conveyance and contract has been abandoned by both parties, and the deed a cloud on the title of the father, which should be cancelled as such.

As to the amended bill for rents, we think there was no necessity for it, and that no such account should be had; that the parties had settled all this satisfactorily from year to year until this litigation, and the complainant should have no rents.

The result is, the complainants will have a decree as herein indicated, but he will pay two-thirds of the costs of the cause, defendants the balance, he having produced the necessity for the litigation by his fraudulent effort to hinder his creditors in the collection of their debts.